IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRIER SPECIALTY ROOFING & COATINGS, INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ICI PAINTS NORTH AMERICA, INC.,<br><br>　　　　Defendant.<br>_____/ | CASE NO. CV F 07-1614 LJO TAG<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT CLAIMS**<br>(Doc. 18.) |

**INTRODUCTION**

Defendant The Glidden Company, Inc. ("Glidden")[1] seeks F.R.Civ.P. 12(b)(6) dismissal of plaintiff Barrier Specialty Roofing & Coating, Inc.'s ("Barrier's") products liability, fraud and breach of oral contract claims on grounds that they are barred under California law and are pled with insufficient particularity. Barrier responds that the claims are sufficiently pled and are recognized under California law. This Court considered Glidden's motion to dismiss on the record and VACATES the May 8, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS in part Glidden's requested F.R.Civ.P. 12(b)(6) relief and GRANTS Barrier leave to amend claims at issue.

---

[1] Glidden notes that it is incorrectly sued under the name ICI Paints North America, Inc. in that Glidden does business as ICI Paints.

1

# BACKGROUND[2]

## Barrier's Central California Projects

Barrier installs roofing systems on commercial properties. Glidden manufactures and sells roofing products.

In August 2006, Barrier was hired to install a polyurethane foam insulative roofing system on a building at the Parkway Trails Shopping Center ("Parkway Trails") in Clovis. In September 2006, Barrier was hired to install a polyurethane foam insulative roofing system at the Warner Herndon Professional Center ("Warner Herndon") in Fresno. These projects required, and Barrier applied to the projects, a weather-resistant roof coating ("roof coating"), which Barrier purchased from Glidden. Barrier supplied the property owners with "a 10+10 year No Leak Warranty" for the roof systems.

About a month after application of the Glidden roof coating, Barrier inspected the Parkway Trails and Warner Herndon roofs and determined that the roof coating was bubbling, cracking, discoloring and delaminating in many locations. Barrier contends that by early 2007, the roof coating could be peeled off in large sections to require replacement of the roofing systems at Parkway Trails and Warner Herndon.

## Barrier's Hawaii And Puerto Rico Projects

Barrier contends that is has experienced problems with Glidden roofing products on Costco stores in Hawaii and Puerto Rico ("Costco projects"). Barrier's investigation of the Costco projects revealed widespread cracking, rusting, delamination and discoloration of roofs where Barrier had applied products purchased by Glidden.

## Glidden's Challenges To Barrier's Claims

Barrier's SAC alleges seven causes of action, five of which Glidden challenges on grounds that:[3]

1. The (second) negligence, (fourth) strict products liability and (fifth) negligent misrepresentation causes of action seek damages which are unrecoverable under such tort

---

[2] The factual recitation is derived generally from Barrier's Second Amended Complaint ("SAC"), which is the target of Glidden's challenges.

[3] Glidden does not challenge the SAC's (third) breach of implied warranty and (seventh) unfair business practices causes of action. This Court will address in greater detail below the specific claims which Glidden challenges.

theories and are barred under California's economic loss doctrine;

2. The (fifth) negligent misrepresentation and (sixth) intentional misrepresentation causes of action lack sufficient specificity to satisfy F.R.Civ.P. 9(b); and

3. The (first) breach of contract cause of action includes a breach of oral contract claim barred by the statute of frauds.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

With these standards in mind, this Court turns to Glidden's specific challenges to the SAC.

///

3

**Standing**

The SAC's (second) negligence cause of action alleges that Glidden provided defective products to breach its duty of care to provide products for "the construction of the roofing systems on the PROPERTIES" to result in "physical damages to the PROPERTIES."[4] The (fourth) strict products liability cause of action alleges that the roofing products sold to Barrier "were defective and unfit for their intended purpose because said products contained defects in their design, parts, materials used to manufacture them, and how they were manufactured." The (fifth) negligent misrepresentation cause of action alleges that Glidden misrepresented that:

1. Products for Parkway Trails and Warner Herndon were tested and rated by the Cool Roof Rating Council ("CRRC");[5]
2. Glidden would issue to Barrier a 10-year warranty on the products for Parkway Trails and Warner Herndon;
3. Products for the Costco projects were suited for application to curb and skylight areas; and
4. Glidden would abide by results of lab testing roof coatings.[6]

Glidden notes that the SAC claims physical damages to buildings at issue although the SAC fails to allege that Glidden had an ownership interest in effected properties to provide Glidden standing to pursue physical damages claims. Glidden argues that "Barrier has not and cannot claim that the damaged property belonged to it" in that Barrier "put roofs on various buildings owned by *others*." (Italics in original.) Glidden relies on California Code of Civil Procedure section 367, which provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."

Barrier responds that the Parkway Trails and Warner Herndon owners have assigned to Barrier claims against Glidden. Barrier notes that Span Construction & Engineering, Inc. ("Span"), which

---

[4] The SAC defines the "PROPERTIES" as Parkway Trails, Warner Herndon and the Costco projects.

[5] CRRC is a non-profit roofing industry organization which evaluates solar reflectance and thermal emittance of roofing products.

[6] The (sixth) intentional misrepresentation cause of action makes these same allegations.

1  installed roofing systems on three Hawaii Costco projects, assigned to Barrier its claims against Glidden.
2  Barrier submits April 21, 2008 assignments of claims signed by the Parkway Trials and Warner Herndon
3  owners and Span. As such, Barrier contends it "has obtained all rights to the property damage claims
4  which have resulted in damages to its customers arising from the defective GLIDDEN products."

5  Glidden criticizes the assignments as an untimely attempt to cure standing in that "the
6  assignments were executed only after Barrier received Glidden's Motion to Dismiss and was put on
7  notice of its standing deficiencies."

8  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper
9  party to invoke judicial resolution of the dispute and exercise of the court's remedial powers." *Warth*
10 *v. Seldin*, 430 U.S. 490, 518, 95 S.Ct. 2197 (1975). To invoke standing, a plaintiff must allege "(a) a
11 particularized injury (b) concretely and demonstrably resulting from defendant's action (c) which injury
12 will be redressed by the remedies sought." *Bowker v. Morton*, 541 F.2d 1347, 1349 (9th Cir. 1976).
13 "Pecuniary injury is a sufficient basis for standing." *Fair v. United States Envir. Protection Agency*, 795
14 F.2d 851, 853 (9th Cir. 1986); *see Barlow v. Collins*, 397 U.S. 159, 163-164, 90 S.Ct. 832, 835-836
15 (1970).

16 Standing and real-party-in-interest questions overlap to the extent they ask whether the plaintiff
17 has a personal interest in the controversy. *Whelan v. Abell*, 953 F.2d 663, 672 (D.C.), *cert. denied*, 506
18 U.S. 906, 113 S.Ct. 300 (1992). F.R.Civ.P. 17(a)(1) addresses real party in interest and provides in
19 pertinent part: "An action must be prosecuted in the name of the real party in interest." "Rule 17(a) is
20 designed to ensure that lawsuits are brought in the name of the party possessing the substantive right at
21 issue." *Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau*, 701 F.2d 1276, 1282
22 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88 (1983). F.R.Civ.P. 17(a)'s function "is simply to
23 protect the defendant against [a] subsequent action by the party actually entitled to recover, and to insure
24 generally that the judgment will have its proper effect as res judicata." F.R.Civ.P. 17 Adv. Comm. Note.

25 "As a general proposition it can be said ' 'that the only causes or rights of action which are not
26 transferable or assignable in any sense are those which are founded upon wrongs of a purely personal
27 nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction,
28 breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims

and rights of action whatever are generally held to be transferable.'" *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 834, 69 Cal.Rptr. 321 (1968) (citations omitted). "[A]ssignability of things [in action] is now the rule; nonassignability, the exception, and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party." *Webb v. Pillsbury*, 23 Cal.2d 324, 327, 144 P.2d 1 (1943).

Glidden does not challenge assignability of the tort claims at issue here. Glidden challenges whether the assignments of claims to Barrier are properly before this Court. The SAC does not allege the assignments and their underlying facts. Barrier asks this Court to consider matters outside the complaint, an endeavor from which this Court is generally precluded. *See Van Winkle v. Allstate*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Another unresolved issue is whether Span owns the Costco projects at issue and if not, its standing to assign property damage claims to Barrier. Since the standing issue appears potentially curable by amendment, this Court DISMISSES with leave to amend the physical damages claims. Barrier is granted leave to allege facts that it has standing to pursue physical damages claims or to drop the physical damages claims.

**Economic Losses**

In connection with the negligence, strict products liability and negligent misrepresentation causes of action, Glidden challenges Barrier's following economic losses[7] alleged in the SAC:

1. "BARRIER will be required to replace the roofing systems at both PARKWAY TRAILS and WARNER HERNDON";

2. "As a result of the ROOF COATING problems, the owners of PARKWAY TRIALS [sic] and WARNER HERNDON have informed BARRIER that they will no longer utilize its services for other roofing projects. The loss of these customers was a significant blow to BARRIER's business and income as they had been customers for years and had provided BARRIER with a significant number of roofing projects"; and

---

[7] "[E]conomic loss generally means pecuniary damage that occurs through loss of value or use of the goods sold or the cost of repair together with consequential lost profits *when there has been no claim of personal injury or damage to other property*." *MDU Resources Group v. W.R. Grace and Co.*, 14 F.3d 1274, 1279 (8th Cir.) (italics in original), *cert. denied*, 513 U.S. 824, 115 S.Ct. 89 (1994). "For example, the reduction of fair market value of buildings found to contain asbestos building materials may constitute an economic loss that cannot be recovered in tort in a strict liability or negligence action." *San Francisco Unified School Dist. v. W.R. Grace*, 37 Cal.App.4th 1318, 1327, n. 5, 44 Cal.Rptr.2d 305 (1995).

3.  The problems with Glidden's products "have also adversely impacted BARRIER's overall reputation in the business community" to increase difficulty "to secure new customers and projects" and to reduce "BARRIER's business income."

Glidden argues that "Barrier's tort-based negligence, strict liability and negligent misrepresentation causes of action are barred because Barrier has not and cannot plead any damage to its property and because its only damages are economic losses barred by the economic loss rule." Glidden adds that the only property which could have been damaged was owned by others and that the SAC describes "only the alleged deficiencies of the product itself, without any damage to other property."

"[P]laintiffs may recover in tort for physical injury to person or property, but not for purely economic losses that may be recovered in a contract action." *W.R. Grace & Company*, 37 Cal.App.4th at 1327, 44 Cal.Rptr.2d 305. In *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal.App.4th 357, 363-364, 62 Cal.Rptr.2d 701 (1997), the California Court of Appeal observed:

> Under California law, a manufacturer may be strictly liable for physical injuries caused to person or property, but not for purely economic losses. . . . "[T]he line between physical injury to property and economic loss reflects the line of demarcation between tort theory and contract theory. . . ." Economic "loss or harm has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits-without any claim of personal injury or damages to other property . . . .'" (Citations omitted.)

"In summary, the economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself. The law of contractual warranty governs damage to the product itself." *Jimenez v. Superior Court*, 29 Cal.4th 473, 483, 127 Cal.Rptr.2d 614 (2002).

Whereas the "law of sales" (warranty) carefully governs "economic relations between suppliers and consumers of goods," the strict liability doctrine governs "the distinct problem of physical injuries." *Seely v. White Motor Co.*, 63 Cal.2d 9, 15, 45 Cal.Rptr. 17 (1965). "[R]ules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed." *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 63, 27 Cal.Rptr. 697 (1963). "The doctrine of strict liability, however, is not a substitute for

1  contract and warranty law where the purchaser's loss is the benefit of the bargain, and unless the parties
2  specifically agree the product will perform in a certain way, the manufacturer is not responsible for its
3  failure." *Fieldstone*, 54 Cal.App.4th at 366, 62 Cal.Rptr.2d 701 (1997) (economic loss rule barred real
4  estate developer's products liability claims to recover costs to replace defective sinks "prone to rusting,
5  chipping and premature deterioration").

6  As to negligence, "a manufacturer's liability is limited to damages for physical injuries and there
7  is no recovery for economic loss alone." *Seely,* 63 Cal.2d at 18, 45 Cal.Rptr. 17. "Until physical injury
8  occurs – until damage rises above the level of mere economic loss – a plaintiff cannot state a cause of
9  action for strict liability or negligence." *W.R. Grace*, 37 Cal.App.4th at 1327, 44 Cal.Rptr.2d 305. "A
10 consumer should not be charged with bearing the risk of physical injury when a product is purchased,
11 but can fairly be charged with the risk that the product will not match economic expectations unless the
12 manufacturer agrees that it will." *W.R. Grace*, 37 Cal.App.4th at 1328, 44 Cal.Rptr.2d 305.

13 Barrier notes that application of the economic loss rule depends on "whether the defective
14 product damaged property other than the defective product itself." Barrier takes the position that it must
15 allege merely that "the defective product injured property apart from itself" and that Glidden seeks to
16 add, without citation to pertinent authority, a requirement that "the damaged property be owned by the
17 contractor who is seeking relief." Glidden responds that Barrier's allegations are "contractual: that
18 Glidden's product failed to perform as warranted on commercial roofing systems that Barrier installed
19 on properties owned by others."

20 The SAC alleges Barrier's need to replace roofing systems, lost business and income, and
21 damaged reputation. Such claims constitute consequential economic losses, not claims of personal
22 injury or property damage. These economic losses sound in contract, not tort, and are not recoverable
23 under strict liability and negligence theories as "physical injury." Such economic losses exceed damage
24 to the structures at issue. Barrier is charged with the risk that Glidden's products did not match
25 economic expectations. As such, this Court DISMISSES with leave to amend the economic loss claims.
26 Barrier is granted leave to allege recognized damages under negligence and strict products liability
27 theories and supporting facts or to drop the economic loss claims.

28 Glidden fails to establish with pertinent authority that the (fifth) negligent misrepresentation

cause of action is subject to dismissal under the economic loss rule. Nonetheless, as discussed below, that cause of action is dismissed without prejudice on other grounds.

### **Special Relationship**

Barrier contends that its "special relationship" with Glidden entitles it to recover economic damages under Barrier's (second) negligence cause of action. Barrier relies on *J'aire Corp. v. Gregory*, 24 Cal.3d 799, 803, 157 Cal.Rptr. 407 (1979), where the California Supreme Court observed that a duty of care to support a negligence claim "may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the independent nature of human society." "Where a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract . . ." *J'aire*, 24 Cal.3d at 804, 157 Cal.Rptr. 407. Existence of such a special relationship turns on factors of:

1. Extent to which the transaction was intended to affect the plaintiff;
2. Foreseeability of harm to the plaintiff;
3. Degree of certainty that the plaintiff suffered injury;
4. Closeness of the connection between the defendant's conduct and the injury suffered;
5. Moral blame attached to defendant's conduct; and
6. Policy to prevent future harm.

*J'aire*, 24 Cal.3d at 804, 157 Cal.Rptr. 407.

As to these factors, the California Supreme Court explained:

> However, the factors . . . place a limit on recovery by focusing judicial attention on the foreseeability of the injury and the nexus between the defendant's conduct and the plaintiff's injury. These factors and ordinary principles of tort law such as proximate cause are fully adequate to limit recovery without the drastic consequence of an absolute rule which bars recovery in all such cases. . . . Following these principles, recovery for negligent interference with prospective economic advantage will be limited to instances where the risk of harm is foreseeable and is closely connected with the defendant's conduct, where damages are not wholly speculative and the injury is not part of the plaintiff's ordinary business risk.

*J'aire*, 24 Cal.3d at 808, 157 Cal.Rptr. 407.

Barrier contends that the SAC alleges sufficient facts of a special relationship to support "negligence on product liability claims." As to the extent to which the transaction was intended to affect Barrier, Barrier points to SAC allegations that Glidden and the manufacturer of polyurethane foam used

9

on Parkway Trails and Warner Herndon inspected the roofing projects and that Glidden rejected the foam manufacturer's test results that roof coating problems were not caused by the foam. According to Barrier, the SAC's allegations "distinguish this case from situations where the defendant/manufacturer had no specific knowledge regarding the particular customer" and demonstrate that the transaction was "intended to effect BARRIER and its customers in particular."

Turning to foreseeability, Barrier claims that "foreseeable" results of Glidden's contract breach include: (1) "damages BARRIER incurred in removing and replacing the defective roof product"; (2) "expenses incurred in dealing with the legal consequences of installing defective material"; (3) "problems for BARRIER in performing the underlying contract with its customers"; (4) "cost for removal and replacement"; and (5) "expenses incurred to defray liability." As to certainty of injury and its connection to Glidden's conduct, Barrier points to SAC allegations that it will be required to replace roofing systems. To support the moral blame factor, Barrier notes the SAC's "reasonable inference that GLIDDEN was aware that the coating was going to be used to waterproof the roofs." Regarding the prevention of future harm factor, Barrier notes the California general policy to hold persons responsible for injuries caused by ordinary care.

Glidden responds that its relationship with Barrier was contractual and not subject to special relationship test which is applies in the absence of privity between plaintiff and defendant. Glidden argues that application of "the special relationship analysis would allow Barrier to unfairly circumvent the economic loss rule to claim damages to which it is not entitled" to "impermissibly blur the distinction between tort and contractual damages."

A fellow district court has noted that "California Supreme Court cases are clear: the six-factor [special relationship] test should be applied only when parties are not in privity." *Dept. of Water and Power of the City of Los Angeles v. ABB Power T & D Co.*, 902 F.Supp. 1178, 1188 (C.D. Cal. 1995). Based on "policy concerns," the California Supreme Court and Ninth Circuit Court of Appeals "have repeatedly cautioned against applying tort principles to contractual relationships." *ABB Power*, 902 F.Supp. at 1188. "There is simply no justification for extending potential tort liability under the six-factor test to commercial parties that have negotiated their own contractual obligations." *ABB Power*, 902 F.Supp. at 1189.

The SAC fails to allege sufficient facts of a special relationship to impose on Glidden the negligence damages sought by Barrier. In short, the SAC alleges that Barrier purchased and applied Glidden's roof coating and roofing products and that problems have arisen to require roofing system replacement. A special relationship may apply to the owners of the subject buildings in that they are the ultimate beneficiaries of Glidden's products. Although Barrier claims assignments from the Parkway Trails and Warner Herndon owners, such facts are not alleged in the SAC. The SAC and record are unclear whether Scan owns the Costco projects, which are presumably owned by Costco.

SAC allegations on the other special relationship factors are weak as well. Foreseeability of harm and certainty of injury allegations, if any, tilt toward the building owners as to their need to replace roofing systems. Connection to Glidden's conduct points toward the building owners' need to replace the roofs. The SAC alleges no facts that Barrier is obliged to replace roofing systems other than passing mention of a 10+10 Year No Leak Warranty and that it will be required to replace the Parkway Trails and Warner Herndon roofing systems. As a whole, the SAC alleges a contractual transaction between Barrier and Glidden, not a special relationship giving rise to the negligence damages claims alleged by Barrier. Privity between Barrier and Glidden defeats a special relationship negligence claim. In the absence of alleged facts beyond the privity relationship, Barrier is not entitled to seek tort damages under the special relationship test. As such, this Court DISMISSES with leave to amend Barrier's negligence damages claims arising under the special relationship test. Barrier is granted leave to allege facts, among others, to support the special relationship test and that Barrier has standing and is entitled to pursue damages under the special relationship test or to drop special relationship claims.

In light of this Court's rulings on standing, physical damages claims, economic loss claims, and the special relationship test, this Court DISMISSES with leave to amend the (second) negligence and (fourth) strict products liability causes of action. Barrier is granted leave to cure pleading deficiencies addressed above or to drop claims.

**Conclusory Fraud Allegations**

Glidden faults Barrier's negligent and intentional misrepresentation causes of action as pleading "vague, broad and conclusory facts regarding representations made by 'Defendants.'" Glidden argues that the SAC "fails to state where and when these alleged representations were made and only makes

conclusory comments regarding why these facts were false or misleading." Glidden points to F.R.Civ.P. 9(b) which requires at party to "state with particularity the circumstances constituting fraud."[8] Glidden argues that Barrier must "state at the very least *where* the statements were made, *to whom* the statements were made and *by whom*, and *in what fashion* the statements are misleading." (Italics in original.)

A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

---

[8] F.R.Civ.P. 9(b)'s particularity requirement applies to state-law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged).

The elements of fraud under California law are:

1. Misrepresentation (false representation, concealment or nondisclosure);
2. Knowledge of falsity ("scienter");
3. Intent to defraud, i.e., to induce reliance;
4. Justifiable reliance; and
5. Resulting damage.

*City Solutions, Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004).

The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004).

Glidden notes that the SAC makes vague allegations that "Defendants" misrepresented Glidden's products and fails to allege facts to show when and where the alleged misrepresentations occurred. Glidden is correct. The SAC's negligent and intentional misrepresentation causes of action allege that "Defendants" misrepresented that:

1. Products for Parkway Trails and Warner Herndon were tested and rated by the Cool Roof Rating Council ("CRRC");
2. Glidden would issue to Barrier a 10-year warranty on the products for Parkway Trails and Warner Herndon;
3. Products for the Costco projects were suited for application to curb and skylight areas; and
4. Glidden would abide by results of lab testing roof coatings.

The SAC fails to allege the time, place and maker of alleged misrepresentations. In its opposition, Barrier focuses on matters other than the time, place and maker of alleged

misrepresentations. The SAC does not precisely define "Defendants" who could include unknown Glidden representatives, employees or officers. Although the SAC suggests what is false and misleading about alleged statements, the SAC fails to pinpoint the "circumstances" constituting fraud, that is, the circumstances comprising the alleged false statements. The SAC identifies the false statements but not their time, place and maker. The fraud allegations are conclusory and fail to permit Glidden to prepare an adequate answer to the allegations. As such, this Court DISMISSES with leave to amend the SAC's (fifth) negligent misrepresentation and (sixth) intentional misrepresentation causes of action. Barrier is granted leave to comply with F.R.Civ.P. 9(b), and in particular, to allege the time, place and maker of alleged misrepresentations. Alternatively, Barrier may drop the negligent and intentional misrepresentation causes of action.

### Statute Of Frauds

Glidden contends the statute of frauds bars the (first) breach of contract cause of action's claim that "Defendants also orally agreed that they would provide a 10 year project specific warranty for the PARKWAY TRAILS and WARNER HERNDON projects." California Civil Code section 1624 invalidates, unless "in writing and subscribed by the party to be charged," an "agreement that by its terms is not to be performed within a year from the making thereof." Glidden argues that the warranty's 10-year duration "exceeds the requirement that such agreements be able to be performed within one year." Glidden further argues that "there is no real distinction between 'issuing' a 10 year warranty and orally agreeing a product's performance for 10 years."

Barrier responds that Glidden misinterprets the breach of oral warranty claim in that the "claim is based on the premise that GLIDDEN promised to issue 10 year written warranties for the two projects and then failed to provide the warranties." Barrier points to the following SAC allegations:

> 17.   When [Glidden] sold BARRIER the ROOF COATING it further represented that it would issue a 10 year project specific warranty for the PARKWAY TRAILS and WARNER HERNDON projects. . . . Despite repeated demands by BARRIER and promises by [Glidden's] representatives to do so, [Glidden] has never issued the warranties for either of the projects.

> 29.   In addition to the written terms of the contracts . . . Defendants also orally agreed that they would provide a 10 year project specific warranty for the PARKWAY TRAILS and WARNER HERNDON projects.

> 32.   Defendants breached their contracts with BARRIER and therefore caused

damages to BARRIER and to the PARKWAY TRAILS and WARNER HERNDON projects. Defendants' breaches include . . . failing to provide to BARRIER with the 10 year warranties . . .

Barrier's breach of oral contract claim is based on Glidden's failure to issue warranties, not failure to honor them. Barrier notes that the 10-year warranty "was not created by the parties' oral agreement" and that Glidden could have issued the warranty within one year to render the warranty length irrelevant.

To the extent that Barrier's claim is limited to failure to issue a warranties, its survives a statute of frauds attack at this pleading stage. The claim is not for breach of warranty but rather failure to issue a warranty. Damages arising from a failure to issue claim are not warranty damages. As such, this Court DENIES dismissal of the breach of oral contract claim to issue warranties.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with leave to amend the SAC's (second) negligence, (fourth) strict products liability, (fifth) negligent misrepresentation and (sixth) intentional misrepresentation causes of action;

2. DENIES dismissal of the (first) breach of contract cause of action's claim of failure to issue warranties; and

3. ORDERS Barrier, no later than May 27, 2008, to file a third amended complaint to: (1) cure deficiencies of the (second) negligence, (fourth) strict products liability, (fifth) negligent misrepresentation and (sixth) intentional misrepresentation causes of action; or (2) drop the (second) negligence, (fourth) strict products liability, (fifth) negligent misrepresentation and/or (sixth) intentional misrepresentation causes of action.

IT IS SO ORDERED.

Dated:   May 6, 2008                         /s/ Lawrence J. O'Neill
                                             UNITED STATES DISTRICT JUDGE